

# NUMBER 13-18-00051-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**KODELL VALENTINO FOSTER,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

### On appeal from the 54th District Court
### of McLennan County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Benavides
Memorandum Opinion by Justice Contreras**

Appellant Kodell Valentino Foster appeals three convictions of sexual assault, each a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011 (West, Westlaw through 2017 1st C.S.). By three issues, appellant argues that: (1) he was denied his constitutional right to a speedy trial, (2) the trial court erred when it allowed the

introduction of character evidence, and (3) the trial court erred when it allowed the introduction of hearsay evidence. We affirm.

## I. BACKGROUND[1]

Appellant was arrested in December of 2014. In January of 2015, a grand jury indicted appellant on three counts of sexual assault. *See id.* On March 10, 2016, appellant filed a motion for speedy trial and asked that the charges be dismissed with prejudice. However, no order setting a hearing on the motion was filed.

On September 29, 2016, appellant's defense counsel filed a motion to withdraw as attorney of record. The trial court held a hearing on the motion on October 21, 2016, and the following exchanged occurred:

| | |
|---|---|
| [Defense Counsel]: | Mr. Foster, tell the Judge why you asked me to file the motion to withdraw. |
| [Appellant]: | Well, sir, with all due respect to the Court. [Counsel] and I, we get along great. I just feel like the process isn't moving along as—as it should be. We filed a motion for a speedy trial on March the 1st, 2016. Also, there's evidence that proves my innocence that—that's came [sic] out, I believe, that we do have. And I just haven't been able to get any answers up until now. I've been incarcerated for almost two years. I haven't gotten absolutely any answers as far as why I'm still here, why I cannot get a—a date to go to trial. Since, obviously, the case will not get dismissed, I would like to go to trial. But I can't get a date to go to trial. And neither I or [Counsel] have been able to get an answer, so . . . . |

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

The trial court told appellant that, at that time, trial was set for November 7, 2016—just over two weeks away. At the end of the hearing, the trial court asked, "anything else from the State or from the defense at this time?", and defense counsel answered "No, sir." The trial court responded: "Okay. Then at this time, I'm going to deny the Motion to Withdraw."

Trial began on December 4, 2017.[2] The complainant testified that she was seventeen years old when the offenses took place. She explained that, while under the influence of prescribed medication, she was walking down the street when appellant offered to give her a ride to her friend's house. The complainant accepted his offer and got in the vehicle. Appellant, however, drove to his house and sexually assaulted her. After the assault was over, appellant drove the complainant away from his house, and she got out of the car once she recognized a gas station they had passed. Appellant had two roommates at the time of the assault: Estella and Elmer Sadler. Both Mr. and Mrs. Sadler testified at trial.

The State called Mrs. Sadler as a witness during its case in chief. During cross-examination, appellant's defense counsel asked Mrs. Sadler if she had any concerns about her children being around appellant when appellant was home, and she answered "No." The State, on re-direct, asked Mrs. Sadler whether she knew appellant had recently been paroled and whether she was aware of his prior felony convictions. Defense counsel objected to this testimony under Texas Rules of Evidence 401, 402, 403, 404(b), and 802. The trial court overruled the objections. Mrs. Sadler testified that: she knew appellant had moved in with her and her husband shortly after being released on parole; she knew

---

[2] Appellant and the State filed agreed requests for a continuance on October 21, 2016; July 3, 2017; and September 13, 2017.

3

appellant had been imprisoned for multiple years prior to his release on parole; and she did not know he had convictions for possession of cocaine, possession of a controlled substance with intent to deliver, and possession of a firearm by a felon.

The jury found appellant guilty of all three counts. The State sought to enhance appellant's punishment due to a prior felony conviction, *see id.* § 12.42(b) (West, Westlaw through 2017 1st C.S.), and appellant pleaded true to the enhancement allegation. The jury assessed punishment at confinement for life and a $10,000 fine for each count, with the sentences to run concurrently. *See id.* § 12.32 (West, Westlaw through 2017 1st C.S.) (providing that a first-degree felony is punishable by imprisonment for a term between five to ninety-nine years and a fine not to exceed $10,000). This appeal followed.

## II. RIGHT TO SPEEDY TRIAL

By his first issue, appellant argues that his right to a speedy trial was violated.

## A. Applicable Law and Standard of Review

A criminal defendant has the right to a speedy trial. *See* U.S. CONST. amends. VI, XIV; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (West, Westlaw through 2017 1st C.S.); *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014); *see also Dillingham v. U.S.*, 423 U.S. 64, 65 (1975) (noting that the right to a speedy trial is triggered by formal indictment or arrest). "This ensures that the defendant is protected from oppressive pretrial incarceration, mitigates the anxiety and concern accompanying public accusations, and ensures that the defendant can mount a defense." *Henson v. State*, 407 S.W.3d 764, 766 (Tex. Crim. App. 2013) (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)).

We analyze speedy trial claims "on an ad hoc basis," weighing and balancing the factors set forth in *Barker v. Wingo*: (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the right, and (4) the prejudice to the accused. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see Barker*, 407 U.S. at 530. "While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280. "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id.*

We apply a bifurcated standard of review to a trial court's ruling on a speedy trial claim. *Id.* at 282. We review the factual components for an abuse of discretion, while we review the legal components de novo. *Id.* Review of the individual *Barker* factors necessarily involves factual determinations and legal conclusions, but the balancing test as a whole is "a purely legal question." *Id.* With regard to the trial court's resolution of factual issues, we view all the evidence in the light most favorable to the trial court's ultimate ruling. *Id.*

## B. Preservation

Preservation requirements apply to speedy-trial claims. *Henson*, 407 S.W.3d at 768. "Without a requirement of preservation, a defendant would have great incentive not to insist upon a speedy trial and then to argue for the first time on appeal that the prosecution should be dismissed because of delay." *Id.* at 769. Thus, a defendant can "either fail to insist upon a speedy trial and reap the benefits caused by delay, or he can insist on a prompt trial, and if it is not granted, argue for a dismissal." *Id.*

To preserve a speedy-trial claim for appellate review, a defendant must: (1) raise the claim before trial begins, (2) present evidence of the claim to the trial court, and (3) obtain a ruling after presentation of evidence of the claim. *See* TEX. R. APP. P. 33.1; *Gonzalez*, 435 S.W.3d at 805–08; *Henson*, 407 S.W.3d at 768–69; *Crocker v. State*, 441 S.W.3d 309, 311 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Dean v. State*, 995 S.W.2d 846, 850 (Tex. App.—Waco 1999, pet. ref'd). Appellate courts will generally find that a trial court made an implicit ruling on an objection when the objection was brought to the trial court's attention and the trial court's subsequent action clearly addressed the complaint. *See James v. State*, 102 S.W.3d 162, 169 (Tex. App.—Fort Worth 2003, pet. ref'd); *State v. Kelley*, 20 S.W.3d 147, 153–54 & n.3 (Tex. App.—Texarkana 2000, pet. ref'd).

## C.    Analysis

Here, appellant filed a motion for speedy trial on March 10, 2016, but he did not obtain a hearing or an explicit ruling on the motion. On appeal, appellant points to the trial court's hearing on the motion to withdraw in support of his speedy trial argument. The State argues that appellant did not preserve this complaint for our review. Assuming, without deciding, that appellant preserved error, we proceed to analyze the *Barker* factors. *Cantu*, 253 S.W.3d at 280.

### 1.  The First Factor:  Length of Delay

The length of the delay between an initial charge and the defendant's demand for speedy-trial acts as a triggering mechanism. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (en banc); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999) (en banc). Unless the delay is presumptively prejudicial, courts need not

6

examine the other three factors. *Zamorano*, 84 S.W.3d at 648. Thus, any speedy trial analysis depends first upon whether the delay is more than "ordinary"; if so, the longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant. *Gonzalez*, 435 S.W.3d at 809; *Zamorano*, 84 S.W.3d at 649.

Here, the delay of twenty-two months between appellant's arrest and the denial of his motion for speedy trial is presumptively prejudicial and sufficient to trigger a *Barker* analysis. *See Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992) (noting that a one-year delay is presumptively prejudicial); *Shaw v. State*, 117 S.W.3d 883, 888–89 (Tex. Crim. App. 2003) (same). Because the delay of twenty-two months triggers judicial examination of the claim, this factor weighs against the State. *See Gonzalez*, 435 S.W.3d at 809; *Zamorano*, 84 S.W.3d at 649.

### 2.  The Second Factor:  Reason for Delay

Once the length of time is found to be presumptively prejudicial, the burden of justifying the delay falls on the State. *Smith v. State*, 436 S.W.3d 353, 355 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Cantu*, 253 S.W.3d at 280); *see Zamorano*, 84 S.W.3d at 649. Unjustifiable reasons for the delay count towards the "length of delay," while justifiable reasons for delay do not. *Gonzales*, 435 S.W.3d at 810; *see Munoz*, 991 S.W.2d at 822 ("A valid reason for the delay should not be weighed against the government at all."). For example,

> A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded court should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Zamorano*, 84 S.W.3d at 649.

7

This was a criminal prosecution for three offenses of sexual assault, where the stories from the accused and complainant were in conflict. The State explained at the hearing on appellant's motion to withdraw that part of the delay occurred due to DNA testing that was ordered. The record indicates that the initial request for DNA testing was submitted on December 19, 2014 and that the initial report was issued on July 16, 2015. The report excluded appellant as the source of the DNA recovered from the complainant after the assault.

In a sexual assault case, a delay due to pending DNA results that could favor either the State or the accused is a justifiable, valid reason for the delay. *See Barker*, 407 U.S. at 531–32; *Brown v. Bobby*, 656 F.3d 325, 333–34 (6th Cir. 2011); *State v. Davis*, 549 S.W.3d 688, 702–03 (Tex. App.—Austin 2017, no pet.); *Celestine v. State*, 356 S.W.3d 502, 507–08 (Tex. App.—Houston [14th Dist.] 2009, no pet.). In the underlying hearing on appellant's motion to withdraw, appellant conceded as much, stating that he believed the DNA results from July 16, 2015 proved his innocence. Thus, the delay of seven months between appellant's arrest in December of 2014 and the initial DNA results issued on July 16, 2015 was a valid and justifiable delay. *See Brown*, 656 F.3d at 333–34; *Celestine*, 356 S.W.3d at 507–508; *Davis*, 549 S.W.3d at 702–03.

Excluding the time required for the initial DNA testing (seven months) from the total length of the delay at the time of the hearing on appellant's motion to withdraw (twenty-two months), we are left with a delay of about fifteen months. The record does not contain an explanation for this delay, but part of it may have been due to further DNA testing requested by the State. In the absence of an explanation, the trial court could not presume either a deliberate delay by the State in order to prejudice the defendant or a

8

valid reason for the delay. *Huff v. State*, 467 S.W.3d 11, 29 (Tex. App.—San Antonio 2015, pet. ref'd) (citing *Shaw*, 117 S.W.3d at 889; *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)). At most, the delay amounted to official negligence. *See Zamorano*, 84 S.W.3d at 649–50. Thus, we conclude that the delay of fifteen months weighs against the State, but not heavily.[3] *See Dragoo*, 96 S.W.3d at 314; *Zamorano*, 84 S.W.3d at 649 ("Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun"); *Huff*, 467 S.W.3d at 29; *Smith*, 436 S.W.3d at 365.

### 3. The Third Factor: Assertion of Right

Appellant filed a motion for speedy trial and asked the court to dismiss the case, not to set a trial date. "If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure." *Cantu*, 253 S.W.3d at 283; *see State v. Davis*, 549 S.W.3d 688, 704 (Tex. App.—Austin 2017, no pet.). Appellant provided no such reasons here. Also, "[r]epeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only dismissal." *Cantu*, 253 S.W.3d at 283*; see Henson*, 407 S.W.3d at 769. Here, appellant only raised his speedy-trial complaint once, and it was raised fifteen months after being

---

[3] We note that appellant's trial began almost fourteen months after the hearing on his motion to withdraw. Subsequent to that hearing, the State and appellant filed joint, agreed motions to reset the trial date on October 21, 2016; July 3, 2017; and September 13, 2017. Those actions "are inconsistent with a demand for a speedy trial," *see Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013), and we exclude agreed resets from our delay calculation. *Lopez v. State*, 478 S.W.3d 936, 942 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (quoting *Celestine v. State*, 356 S.W.3d 502, 507–08 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). The agreed resets covered the time frame from the hearing on the motion to withdraw until trial began.

arrested. "Under *Barker*, appellant's failure to diligently and vigorously seek a rapid resolution is entitled 'strong evidentiary weight.'" *Cantu*, 253 S.W.3d at 283 (quoting *Barker*, 407 U.S. at 531–32).

This factor weighs against appellant.

### 4. The Fourth Factor: Prejudice

"Because 'pretrial delay is often both inevitable and wholly justifiable,' the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant." *Id.* at 285. We analyze the prejudice to appellant in light of the interest the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired. *Id.* Prejudice to the accused's defense is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Appellant did not testify that he was anxious or concerned about the case or that his incarceration was oppressive. More importantly, appellant did not testify or argue that his defense was impaired in any way. Finally, appellant raised his speedy-trial complaint fifteen months after being arrested, and his silence for the entirety of that time suggests that any hardships he suffered were either minimal or caused by other factors. *See United States v. Palmer*, 537 F.2d 1287, 1288 (5th Circ. 1976) (concluding that appellant's silence for thirty months after arrest worked against him); *Cantu*, 253 S.W.3d at 284–85 (similar).

This factor weighs heavily against defendant.

### D. Balancing Test

10

In sum, the evidence in this case fully supports the trial court's ruling. There was a delay of fifteen months that weighs in favor of finding a violation of appellant's right to a speedy trial. However, from the record, we conclude that appellant did not really want a speedy trial; he wanted only a dismissal of the charges. The nature of the State's delay and official negligence, the tardiness of appellant's sole assertion of his speedy-trial right, and the lack of any substantial personal or defense prejudice resulting from the State's delay convinces us that the trial court did not err in denying appellant's motion for speedy trial. We conclude appellant was not denied his Sixth Amendment right to a speedy trial. *See Barker*, 407 U.S. at 534; *Cantu*, 253 S.W.3d at 286–87; *Dragoo*, 96 S.W.3d at 308.

We overrule appellant's first issue.

### III.    CHARACTER EVIDENCE

By his second issue, appellant argues that the trial court erred when it allowed the State to introduce character evidence because (1) defense counsel did not open the door to allow for its admission and (2) its probative value was substantially outweighed by the danger of unfair prejudice. Specifically, appellant complains of testimony elicited from Mrs. Sadler regarding appellant's parole in December of 2014 and her knowledge of appellant's prior convictions.

### A.    Standard of Review and Applicable Law

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial judge abuses his discretion when his decision falls outside the zone of reasonable disagreement. *Id.* If the trial court's evidentiary ruling is correct under any applicable

11

theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Id.*

"In a criminal case, a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." TEX. R. EVID. 404(a)(2). "A witness who testifies to the defendant's good character may be cross-examined to test the witness's awareness of relevant specific instances of conduct." *Wilson v. State*, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002) (internal quotations omitted) (citing TEX. R. EVID. 405(a)); *see Harrison v. State*, 241 S.W.3d 23, 27–28 (Tex. Crim. App. 2007). The purpose of the cross-examination is to demonstrate that (1) the character witness is not really familiar with the defendant's character because he or she was unaware of prior incidents or (2) the character witness, who is familiar with this incident and nonetheless asserts that the defendant has a good character for this trait, has a very low threshold for "good" character. *Wheeler v. State*, 67 S.W.3d 879, 886 n.16 (Tex. Crim. App. 2002) (en banc); *see Wilson*, 71 S.W.3d at 350. However, the incidents inquired about must be relevant to the character traits at issue. *Wilson*, 71 S.W.3d at 351; *Murphy v. State*, 4 S.W.3d 926, 931 (Tex. App.—Waco 1999, pet. ref'd).

Even when such rebuttal testimony is admissible, however, a court may still exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

**B.     Analysis**

Here, defense counsel asked Mrs. Sadler whether she had any qualms about having her children around appellant. Mrs. Sadler answered no. This communicated

12

that, in her opinion, appellant possessed character good enough to live in the same house as her children. *See Harrison*, 241 S.W.3d at 25, 27–28; *Pantoja v. State*, 496 S.W.3d 186, 191–92 (Tex. App.—Fort Worth 2016, pet. ref'd); *Burke v. State*, 371 S.W.3d 252, 261 (Tex. App.—Houston [1st Dist.] 2011 pet. dism'd). Therefore, the door was opened for cross-examination of Mrs. Sadler regarding her awareness of specific instances of conduct by appellant. *See* Tex. R. Evid. 404(a)(2), 405(a); *Harrison*, 241 S.W.3d at 27–28; *Wilson*, 71 S.W.3d at 350; *Turner v. State*, 4 S.W.3d 74, 78–79 (Tex. App.—Waco 1999, no pet.).

Appellant complains of two pieces of Mrs. Sadler's testimony elicited by the State: (1) that she was aware he had been recently released on parole after multiple years of incarceration; and (2) that she was unaware he had prior felony convictions for possession of cocaine, possession of a controlled substance, and possession of a firearm by a felon. Appellant argues that the testimony does not "logically rebut [Mrs. Sadler's] testimony that she was not concerned with her children being around appellant." We disagree. The incidents inquired about show that appellant's character might pose a risk of endangerment to Mrs. Sadler's children. *Cf. In re B.C.S.*, 479 S.W.3d 918, 926–27 (Tex. App.—El Paso 2015, no pet.) ("Imprisonment alone does not constitute an endangering course of conduct, but it is a fact properly considered on the endangerment issue."); *In re A.L.H.*, 468 S.W.3d 738, 746–47 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (noting that, for parental rights to be terminated, "a parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient"); *In re S.T.*, 263 S.W.3d 394, 401–02 (Tex. App.—Waco 2008, pet. denied) (noting that criminal acts by a parent were evidence of endangerment). Here, the

13

objected-to testimony demonstrated that: (1) Mrs. Sadler was not familiar with appellant's character because she was unaware of three of his prior felony convictions; and (2) Mrs. Sadler, who was familiar with appellant's recent incarceration for multiple years, has a low threshold for "good" character. *See Wilson*, 71 S.W.3d at 350; *Wheeler*, 67 S.W.3d at 886 n.16. Accordingly, we conclude the trial court did not abuse its discretion when it admitted the objected-to testimony.

Nevertheless, appellant argues that, even if the testimony is admissible under Rule 404, the testimony's probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Tucker v. State*, 456 S.W.3d 194, 206 (Tex. App.—San Antonio 2014, pet. ref'd). Again, we disagree.

When the trial court exercises its discretion not to exclude evidence by finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, we give deference to that decision. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Navarro v. State*, 535 S.W.3d 162, 168 (Tex. App.—Waco 2017, pet. ref'd); *Tucker*, 456 S.W.3d at 206. Therefore, in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, we do not conduct a de novo review, and we "should reverse the judgment of the trial court rarely and only after clear abuse of discretion." *Tucker*, 456 S.W.3d at 206 (quoting *Moses*, 105 S.W.3d at 627). In our review, we must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the

probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006).

In this case, the trial court could have reasonably concluded that the objected-to testimony by Mrs. Sadler was probative because it showed Mrs. Sadler formulated her opinion while aware that appellant had recently been released on parole after being incarcerated for several years and without the knowledge that he had been previously convicted of three felonies. This factor weighs in favor of admission. *See id.* at 641; *Navarro*, 535 S.W.3d at 167–68; *Turner*, 4 S.W.3d at 78–79.

We agree that Mrs. Sadler's testimony was prejudicial. But, under Rule 403, mere prejudice will not render the evidence inadmissible; instead, the admission of the evidence must be unfairly prejudicial. *See* Tex. R. Evid. 403. Unfair prejudice "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Tucker*, 456 S.W.3d at 207 (quoting *Gigliobianco*, 210 S.W.3d at 641); *Johnson v. State*, 263 S.W.3d 405, 428 (Tex. App.—Waco 2008, pet. ref'd) (citing *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007)). For example, evidence might be unfairly prejudicial if it invokes the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641. That is not the case here. Mrs. Sadler's testimony was not so graphic or appalling that it would impress the jury in some irrational, but indelible way or suggest a decision on an improper basis. *Cf. Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (en banc) (concluding that offense of abuse of a corpse could potentially affect the jury in an emotional way); *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009 pet. ref'd)

(noting that extraneous-offense evidence of previous sexual assault of a child can "have a tendency to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial nature of crimes of a sexual nature committed against children"). This factor weighs in favor of admission. *See Tucker*, 456 S.W.3d at 207.

"Confusion of the issues" refers to a tendency to confuse or distract the jury from the main issues in the case. *Gigliobianco*, 210 S.W.3d at 641. For example, evidence that consumes an inordinate amount of time to present or answer might tend to confuse or distract the jury from the main issues. *Tucker*, 456 S.W.3d at 207 (citing *Gigliobianco*, 210 S.W.3d at 641). Here, Mrs. Sadler's testimony was straightforward and did not take an inordinate amount of time; therefore, this factor favors admission of the evidence. *See Gigliobianco*, 210 S.W.3d at 641.

"Misleading the jury" refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. *Id.* at 641; *Tucker*, 456 S.W.3d at 207. For example, scientific evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641. Mrs. Sadler's testimony was not prone to this tendency because it concerned matters easily comprehensible by lay people. *See id.*; *Tucker*, 456 S.W.3d at 207. Appellant also does not discuss or elaborate how the complained-of testimony would have misled the jury or how the jury was likely to give the testimony undue weight. This factor weighs in favor of admission. *See Gigliobianco*, 210 S.W.3d at 641; *Tucker*, 456 S.W.3d at 207.

Finally, "undue delay" and "needless presentation of cumulative evidence" concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision. *Gigliobianco*, 210 S.W.3d at 641; *Tucker*, 456 S.W.3d at 207. Here, the testimony in

16

question was very narrowly limited, constituted a very brief section of the record, and was not repetitive. *See Tucker*, 456 S.W.3d at 208; *Greer v. State*, 436 S.W.3d 1, 9 (Tex. App.—Waco 2014, no pet.). Therefore, this factor weighs in favor of admission.

In sum, balancing the Rule 403 factors, we conclude the trial court did not abuse its discretion when it overruled appellant's objection. *See* TEX. R. EVID. 403; *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009); *Gigliobianco*, 210 S.W.3d at 642–43; *Newton*, 301 S.W.3d at 321–22.

We overrule appellant's second issue.

## IV. HEARSAY

By his third issue, appellant challenges the same testimony by Mrs. Sadler on the basis that it was hearsay.

Hearsay is an out of court statement offered to prove the truth of the matter asserted in the statement, and it is inadmissible unless otherwise provided by statute or the rules of evidence. *See* TEX. R. EVID. 801(d), 802; *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

In his brief, appellant claims that "Ms. Sadler's testimony about [appellant's] parole status and his criminal record could only have been based on what she had been told, presumably by her husband, Mr. Sadler, who had been [appellant's] best friend for seventeen years." However, Ms. Sadler never stated at the trial court that she learned these facts from Mr. Sadler, and appellant does not point us to any out-of-court assertion in Mrs. Sadler's testimony. On this record, Mrs. Sadler's testimony did not contain an out-of-court statement, and there is no basis for determining that her statements were hearsay.

17

We overrule appellant's third issue.

## V.    CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 19th
day of December, 2018.