**Darnell Thomas CELESTINE,
Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–08–00766–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 10, 2009.

Steven Hershkowitz, Houston, for appellant.

Alan Curry, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and FROST.

## OPINION

LESLIE B. YATES, Justice.

Appellant Darnell Thomas Celestine pleaded guilty to prohibited sexual conduct and was sentenced to two years' imprisonment. In three issues, appellant contends that the trial court erred in denying his motion to dismiss the indictment pursuant to the Interstate Agreement on Detainers Act and the speedy trial provisions of the Federal and Texas Constitutions. We affirm.

On August 10, 2007, the State filed a complaint alleging that appellant sexually assaulted the complainant, his half-sister, in Harris County. On September 3, 2007, a magistrate found probable cause for appellant's continued detention and committed him to the Harris County Sheriff's custody. An attorney was appointed for appellant, and on October 3, 2007, the parties agreed to set appellant's arraignment for October 25, 2007. On October 25, 2007, the parties agreed to reset the arraignment for November 30, 2007. On November 26, 2007, a grand jury indicted appellant for sexually assaulting the complainant. On November 30, 2007, the parties agreed to set the case for disposition on December 17, 2007, and the trial court ordered appellant to submit DNA samples to the Sheriff's Office upon request. The notation "Harris County notified of arrest in LA 08–27–07" appears on the November 30 agreed setting form. Repeated agreed settings postponed trial until July 18, 2008. Some of the agreed setting forms during that time included notations suggesting that DNA testing was occurring.[1]

On March 26, 2008, the same day the parties agreed to set the case for trial on July 18, 2008, appellant's trial counsel filed a motion to dismiss asserting that appellant had been held for more than 120 days without trial in violation of Texas Code of Criminal Procedure article 51.14, by which Texas enacted the Interstate Agreement

---

1. These notations included "State to submit buccal swab from [defendant]," "DNA submitted?," and "DNA."

on Detainers Act ("IADA"). TEX.CODE CRIM. PROC. ANN. art. 51.14 (Vernon 2006). On July 17, 2008, appellant filed a pro se motion to dismiss, which his trial counsel adopted. In it, appellant asserted that he was on probation in Louisiana when the State filed its complaint, for which he was arrested in Louisiana on August 22, 2007. He claimed that he was extradited to Harris County under the IADA on September 2, 2007, that his Sixth Amendment rights were being violated "because he ha[d] not been to trial," and that the prosecution should be dismissed with prejudice under the IADA.

At the pretrial motions hearing on July 18, appellant acknowledged that he was still on probation in Louisiana. Appellant testified that he was at home in Louisiana when he learned of the Harris County sexual assault charges and turned himself in to Louisiana authorities after learning that they had issued a "probation violation and detainer" as a result of the Harris County case. According to appellant, he appeared before a Louisiana court a few days later, where he was notified of the Texas charges. He testified that the Louisiana court asked if he would like to be extradited to Harris County and had him sign paperwork to begin the extradition process. The trial court took judicial notice of its file and stated that there "is no paperwork regarding extradition in the [trial court's] file, nor is there any request or notice from the defendant that he desired to be tried within a specific time period" and that the trial court was "never given any notice until [July 17] that the [d]efense wished to have a trial within" the time limitations of the IADA. Although the trial court did not mention the March 26, 2008 motion to dismiss based on a violation of the IADA, in arguments prior to the trial court's ruling the defense pointed out that at the "last court setting," which was on March 26, the defense "asked for a 120-day setting from the last time we became aware of the interstate violation and got a trial date within 120 days from that." The trial court denied appellant's motion to dismiss. Appellant pleaded guilty pursuant to a plea bargain and this appeal followed.

## I. The Interstate Agreement on Detainers Act

In his first and second issues, appellant contends that the trial court erred in denying his motion to dismiss under the IADA. Specifically, appellant argues that the trial court erred because (1) the State did not bring him to trial within 180 days after receiving his written notice of his place of imprisonment and his request for a final disposition of the charges pursuant to Article III of the IADA and (2) the State did not bring him to trial within 120 days of his arrival in Texas pursuant to Article IV of the IADA.

■■■ The IADA is a congressionally sanctioned compact, so its interpretation is a question of federal law. *Cuyler v. Adams*, 449 U.S. 433, 438, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). The IADA "prescribes procedures by which a *member state* may obtain for trial a prisoner incarcerated in another *member jurisdiction* and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction." *United States v. Mauro*, 436 U.S. 340, 343, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) (emphasis added). The IADA's purpose is to encourage the expeditious and orderly disposition of "charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions" on the rationale that such charges and detainers

"produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." *See* TEX.CODE CRIM. PROC. ANN. art. 51.14, art. I. Under Article III of the IADA, a prisoner serving a term of imprisonment in one party state subject to a detainer from another party state must be brought to trial within 180 days after he delivers to the charging state written notice of his place of imprisonment and his request for a final disposition of the indictment against him in compliance with the IADA. *Id.* art. III(a). Under Article IV of the IADA, "trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state." *Id.* art. IV(c). We review the legal question of whether the IADA was complied with de novo, but review the trial court's factual findings in that regard under a "clearly erroneous" standard. *Walker v. State*, 201 S.W.3d 841, 845 (Tex.App.-Waco 2006, pet. ref'd); *State v. Miles*, 101 S.W.3d 180, 183 (Tex. App.-Dallas 2003, no pet.).

As a preliminary matter, we must determine whether the IADA applies here. The IADA is contractual in nature. *State v. Williams*, 938 S.W.2d 456, 460 (Tex.Crim.App.1997). Though Texas is a member state of the IADA, Louisiana is not. *See Braxton v. Dunn*, 803 S.W.2d 318, 320 (Tex.Crim.App.1991) (stating that Louisiana is not a signatory to the IADA); *Jones v. State*, No. 14–04–00107–CR, 2005 WL 5341160, at *2 (Tex.App.-Houston [14th Dist.] Mar. 15, 2005, no pet.) (mem. op., not designated for publication) (stating that Louisiana is not a party to the IADA). The IADA's procedures do not apply to member states in their dealings with non-

member states. *See Robinson v. United States*, 580 F.2d 783, 784 (5th Cir.1978) (stating that under the language of Article IV, the terms of the IADA are only operative in transactions between party states and that the IADA's procedures do not apply to the United States in its dealings with non-party states); *Mauro*, 436 U.S. at 354, 98 S.Ct. 1834 (noting that "the United States is a party to the [IADA] as both a sending and a receiving [s]tate"). Moreover, the plain language of Article III clearly contemplates that the IADA is only binding upon party states[2] and demonstrates that the IADA is inapplicable where, as here, a defendant brought from a non-party state claims the IADA's protections in a Texas prosecution. *See Jones*, 2005 WL 5341160, at *2 (rejecting argument of defendant brought from Louisiana to Texas for prosecution that Texas was still required to comply with the IADA as a party despite Louisiana being a non-party); *see also Braxton*, 803 S.W.2d at 320 (implying that IADA was inapplicable to prisoner located in Louisiana because Louisiana is not a signatory to the IADA). Therefore, the IADA's procedures do not apply to Texas in its dealings with Louisiana. We overrule appellant's first and second issues.

## II. Speedy Trial

In his third issue, appellant argues the State violated his right to a speedy trial under the United States and Texas Constitutions. *See* U.S. CONST. amend. VI, XIV; TEX. CONST. art. I, § 10; *see also Barker v. Wingo*, 407 U.S. 514,

---

**2.** Article III of the IADA provides in relevant part:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a *party state,* and whenever during the continuance of the term of imprisonment there is pending in any other

*party state* any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days.... 

TEX.CODE CRIM. PROC. ANN. art. 51.14, art. III(a) (emphasis added).

515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (stating that the Sixth Amendment right to a speedy trial under the Federal Constitution applies to the states through the Fourteenth Amendment). To determine whether the State violated appellant's right to a speedy trial under the Federal or State constitutions, we must weigh and then balance the same four factors: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *See Barker,* 407 U.S. at 530, 92 S.Ct. 2182 (creating the balancing test for reviewing speedy trial claims under the Federal Constitution); *Cantu v. State,* 253 S.W.3d 273, 280 n. 16 (Tex.Crim.App.2008) (noting that although the speedy trial right under the Texas Constitution exists independently of the federal guarantee, claims of a denial of the State speedy trial right are analyzed under the same four *Barker* factors). The *Barker* test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial."[3] *Doggett v. U.S.,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Once the *Barker* test is triggered, we must analyze the speedy-trial claim by first weighing the strength of the *Barker* factors and then balancing their relative weights in light of the conduct of both the prosecution and the defendant. *Cantu,* 253 S.W.3d at 281. None of the *Barker* factors is a necessary or sufficient condition to finding a speedy trial violation. *Id.* Rather, the factors are related and should be evaluated in conjunction with any other relevant considerations. *Id.* In reviewing the trial court's ruling, we review the legal components de novo and review the factual components for an abuse of discretion. *See id.* at 282.

A delay approaching one year from formal accusation or arrest of the defendant until trial has generally been found to be presumptively prejudicial, triggering the *Barker* inquiry. *See id.* at 281; *Shaw v. State,* 117 S.W.3d 883, 888–89 (Tex.Crim.App.2003); *see also U.S. v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (stating that delay is measured from time of formal accusation or arrest until the defendant is brought to trial). However, we have previously held that the time covered by agreed resets is to be excluded from speedy trial consideration, *Caicedo v. State,* 769 S.W.2d 597, 598 (Tex.App.-Houston [14th Dist.] 1989, no pet.), and have stated in reliance on that precedent that agreed resets are "inconsistent with assertion of a speedy trial right, and the delay covered by such resets should not be included in speedy trial computations." *State v. Kuri,* 846 S.W.2d 459, 463 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd). Here, the State filed a complaint against appellant on August 10, 2007 and brought him to trial on July 18, 2008, a delay of more than eleven months. The time from October 3, 2007 until July 18, 2008, however, was covered by agreed settings. Excluding that time from the speedy trial computation leaves a delay of less than two months, which is not presumptively prejudicial. *See Cantu,* 253 S.W.3d at 281 (noting previous holding that four-month delay is insufficient to trigger *Barker* inquiry) (citing *Pete v. State,* 501 S.W.2d 683, 687 (Tex.Crim.App. 1973)). Appellant argues that the notations regarding DNA on some of the agreed settings show that they were solely for the State's benefit. Even if we assume that the notations show that DNA testing occurred, agreed resets for that purpose are not necessarily solely for the State's

---

**3.** "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance...." *Barker,* 407 U.S. at 530, 92 S.Ct. 2182.

benefit because such testing could yield either exculpatory or inculpatory evidence. Therefore, we exclude the time covered by those agreed settings in the length of delay calculation and hold that this case does not involve a presumptively prejudicial delay. *See Kuri*, 846 S.W.2d at 463. Without a presumptively prejudicial delay, "there is no necessity for inquiry into the other [*Barker*] factors," and we must affirm the trial court's judgment. *See Barker*, 407 U.S. at 530, 92 S.Ct. 2182; *see also Pete*, 501 S.W.2d at 687. We therefore overrule appellant's third issue.

Having overruled all of appellant's issues, we affirm the trial court's judgment.