**Affirmed and Memorandum Opinion filed April 3, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00298-CR

_____

**ADRIAN VINCENT DUNCAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 1266187**

## M E M O R A N D U M   O P I N I O N

Appellant Adrian Vincent Duncan was convicted of burglary of a habitation with the intent to commit theft and sentenced to 35 years' incarceration. Appellant presents two issues on appeal, arguing that: (1) the evidence is insufficient to support his conviction, and (2) appellant was denied his constitutional right to a speedy trial.

## BACKGROUND

On June 8, 2010, Nita Brown departed from the garage of her townhome for an afternoon walk and left her garage door open. A few minutes into her walk, Brown testified that she observed a young African American man walking in the neighborhood. Brown testified that she was alarmed by the man's presence in the neighborhood because she had never seen him before and because her neighborhood is made up primarily of "people over the age of 60." She decided to return home a few minutes later.

When she arrived, she found the man, who was later identified as appellant, standing inside her garage. Brown asked him, "Can I do something for you?" He replied, "I'm fine," then walked past Brown out of the garage. Brown stated that she did not see appellant touch anything, but she later noticed that a closet door in the garage was open and an air compressor was in the middle of the garage rather than in its usual location inside the closet. Brown stated that she knew the closet door was closed before she left for the walk, and that she found the compressor in the spot where her husband's car was parked prior to his leaving for work that morning.

Brown immediately alerted her neighbor, Jean Jackson, who told Brown to contact the police while Jackson followed appellant. Jackson departed in the direction she had seen appellant walking. Jackson lost sight of appellant and asked another neighbor, Jim Smith, if he had seen appellant. Smith informed Jackson he had seen appellant pass by at a pace Smith described as "unusual" and with "very large strides" at "a rapid pace," but not running. Jackson soon sighted appellant moving at a "brisk walk" towards a restaurant, where appellant was arrested by police minutes later.

At trial, the jury found appellant guilty of the felony offense of burglary of a habitation with the intent to commit theft. Appellant was sentenced to 35 years' incarceration based upon jury recommendation. Appellant presents two issues on appeal,

2

arguing that: (1) the evidence is insufficient to support his conviction, and (2) appellant was denied his constitutional right to a speedy trial.

## ANALYSIS

### I.      Sufficiency of the Evidence

In appellant's first issue, he argues that the evidence is insufficient to sustain his conviction.    Specifically, he argues that the State presented no evidence to show he intended to commit theft when he entered Brown's garage.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt.   *Palomo v. State*, 352 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010), and *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).   The jury is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence.   *Id*.   Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence.   *Id.*   We draw all reasonable inferences from the evidence in favor of the verdict.   *Id.*   This standard applies to both circumstantial and direct evidence. *Id.*

A person commits the offense of burglary if, without the effective consent of the owner, he enters a habitation and either commits or attempts to commit theft.   TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011).   Intent to commit theft may be inferred from the circumstances.   *Lewis v. State,* 715 S.W.2d 655, 657 (Tex. Crim. App. 1986).   The intent with which a defendant enters a habitation is a fact question for the jury to decide based upon the surrounding circumstances.   *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984).   When supported by sufficient circumstantial evidence, "the jury's finding of intent to steal will not be disturbed on appeal where there is no testimony to indicate that

3

the entry was made with any other intent." *Stearn v. State*, 571 S.W.2d 177, 178 (Tex. Crim. App. [Panel Op.] 1978).

Relying upon *Solis v. State*, 589 S.W.2d 444 (Tex. Crim. App. [Panel Op.] 1979), appellant urges that his behavior on the day of the incident was "inexplicable," and thus insufficient to establish the criminal intent to commit theft. In *Solis*, the defendant removed a window screen from the Alfred residence, then took the screen next door to the Pierce home, "placed it on the lawn near the Pierce front window, and attempted to enter the Pierce house before being interrupted by Mrs. Pierce." *Id.* at 446. The defendant was convicted of attempted burglary with the intent to commit theft in the *Alfred residence*. *Id.* at 445. The Court of Criminal Appeals reversed the conviction because, "although the circumstances show that appellant probably intended to enter the Alfred house with intent to commit theft, his behavior after removal of the screen was sufficiently inexplicable that reasonable doubt remains as to what his specific criminal intentions actually were." *Id.* at 446–47.

In contrast to *Solis*, "there is more evidence in this case than appellant's attempting to enter the complainant's home." *See Gear v. State*, 340 S.W.3d 743, 748 & n.9 (Tex. Crim. App. 2011) (additional evidence, including "implausible and inconsistent explanations for [the defendant's] conduct, and his flight upon being interrupted by the complainant," constituted legally sufficient evidence supporting intent to commit theft). Though appellant's entry occurred during the day and Brown did not see appellant touch any property, Brown testified that the closet door in the garage was closed when she left, that it was open after she returned to find appellant standing in her garage minutes later, and that the air compressor was in the middle of the garage rather than in its usual location inside the closet. Such circumstances support an inference that appellant moved the air compressor, and therefore intended to commit theft. *See Lewis*, 715 S.W.2d at 657 (defendant's presence inside home, in addition to movement of property from a closed cupboard, was sufficient to show an intent to commit theft despite absence of stolen

4

property on defendant's person); *see also Black v. State*, 183 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (evidence of a computer system stacked and "ready to go" near point of entry supported intent to commit theft); *White v. State*, 630 S.W.2d 340, 342 (Tex. App.—Houston [1st Dist.] 1982, no pet.) (movement of equipment from one part of garage to another supported intent to commit theft). And despite the fact that appellant did not "run" from the Brown residence, multiple witnesses testified that appellant left the scene at a pace described as "unusual" and with "very large strides" at "a rapid pace," or a "brisk walk." "[W]hile flight alone will not support a guilty verdict, evidence of flight from the scene of a crime is a circumstance from which an inference of guilt may be drawn." *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g); *see also McLendon v. State*, 167 S.W.3d 503, 509 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

On this record, we conclude there is sufficient evidence to show appellant possessed an intent to commit theft based upon the circumstances surrounding appellant's presence in and departure from Brown's garage. A rational jury could have found appellant guilty of burglary of a habitation beyond a reasonable doubt based on the combined and cumulative force of all the incriminating circumstances presented. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("[I]t is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances."). We overrule appellant's first issue.

## II.    Right to a Speedy Trial

Appellant argues in his second issue that his federal and state constitutional right to a speedy trial was violated because he was incarcerated for more than eight months awaiting trial.

The right to a speedy trial is guaranteed by the Sixth Amendment, which applies to the states through the Fourteenth Amendment. U.S. CONST. amend. VI, XIV; *Barker v.*

5

*Wingo*, 407 U.S. 514, 515 (1972). Under the Texas Constitution, the speedy-trial right exists independently of the federal guarantee, but we review claims relating to a denial of the state speedy-trial right under the same analysis as federal claims. *Cantu v. State*, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App. 2008) (applying same standard to state and federal speedy-trial claims); *see also* TEX. CONST. art. I, § 10; *Barker*, 407 U.S. at 515.

We analyze constitutional speedy-trial claims on a case-by-case basis by "weighing and then balancing the four *Barker v. Wingo* factors," which include: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. *Cantu*, 253 S.W.3d at 280; *see also Barker*, 407 U.S. at 530–32. Appellate courts must conduct a bifurcated review of a trial court's ruling[1] on a speedy-trial motion. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). Factual issues are reviewed under an abuse of discretion standard, while legal issues are reviewed de novo. *Id.*

With respect to the first *Barker* factor, "[t]he length of the delay . . . acts as a 'triggering mechanism.'" *Id.* (citing *Barker*, 407 U.S. at 530). "Unless the delay is presumptively prejudicial, courts need not inquire into [or] examine the other three factors." *Id.* Based upon the circumstances of the case, "the delay that can be tolerated for an ordinary street crime" is considerably less than, for example, a "serious, complex conspiracy charge." *Id.* at 649 (internal quotation omitted).

Delay under the first *Barker* factor is measured from the date of the formal accusation or arrest until the date the defendant is brought to trial. *State v. Smith*, 76 S.W.3d 541, 548 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (citing *Webb v. State*, 36 S.W.3d 164, 173 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)). Pre-accusation delay is not relevant to the speedy-trial analysis. *United States v. Marion*, 404 U.S. 307,

---

[1] Although appellant filed several pro se motions regarding his speedy-trial claim with the trial court, the record does not contain express ruling on the pro se motions. *See Guevara v. State*, 985 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (holding that appellant may not raise an issue regarding speedy-trial claim for the first time on appeal). Because we conclude that appellant's speedy-trial claim is without merit, we need not decide whether appellant properly preserved this issue for our review.

313 (1971). Courts generally have held that a delay approaching one year from formal accusation or arrest of the defendant until trial to be presumptively prejudicial, triggering the analysis of the remaining *Barker* factors. *Cantu*, 253 S.W.3d at 281 n.21; *Celestine v. State*, 356 S.W.3d 502, 507 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Appellant was arrested on June 8, 2010, indicted on August 18, 2010, and brought to trial on March 25, 2011. This establishes a delay of nine months from appellant's arrest (and seven months from indictment) until he was brought to trial. However, appellant agreed to reset his trial—which was originally set for July 20, 2010—on three separate occasions, culminating in a final reset date of October 29, 2010.[2] This court has held that delays based upon agreed resets should not be included in speedy-trial computations under the first *Barker* factor. *See State v. Kuri*, 846 S.W.2d 459, 463 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (agreed resets are "inconsistent with assertion of a speedy trial right, and the delay covered by such resets should not be included in speedy trial computations" under first *Barker* factor), *overruled on other grounds by Johnson v. State*, 954 S.W.2d 770 (Tex. Crim. App. 1997); *accord Celestine*, 356 S.W.3d at 507–08 (relying on *Kuri* to hold that nine-month delay during eleven-month period between arrest and trial was due to agreed resets and therefore excluded from speedy-trial calculations under first *Barker* factor); *cf. Caicedo v. State*, 769 S.W.2d 597, 598 (Tex. App.—Houston [14th Dist.] 1989, no writ) (holding that delay was due to agreed resets, which waived appellant's speedy-trial claim). Accordingly, we can determine that appellant suffered a delay of just over six months for purposes of analyzing his speedy-trial claim.

We conclude on this record that such a delay was not presumptively prejudicial under the first *Barker* factor. *See, e.g.*, *Mannahan v. State*, Nos. 09-04-163-CR & 09-04-164-CR, 2005 WL 2036255, at *2 (Tex. App.—Beaumont Aug. 10, 2005, pet. ref'd)

---

[2] The first and third agreed resets bear appellant's purported signature. The second agreed reset was not signed by appellant, but was signed by his trial counsel. Appellant asserts in his brief on appeal that counsel forced him to sign the agreed reset forms contained in the record. However, appellant raises no issue with respect to such an assertion, and cites to no evidence in the record to support such an assertion.

(mem. op., not designated for publication) (seven-month delay for prosecution of burglary of a building was not presumptively prejudicial); *see also Cantu*, 253 S.W.3d at 281 (noting that courts have held four-month delay insufficient to trigger inquiry of remaining *Barker* factors); *Whitfield v. State*, 137 S.W.3d 687, 690 (Tex. App.—Waco 2004, no pet.) (delays of eight months or more usually are considered presumptively prejudicial); *cf. In re J.M.*, No. 13-04-226-CV, 2005 WL 1910801, at *4 (Tex. App.—Corpus Christi Aug. 11, 2005, pet. denied) (mem. op.) (five-month delay in prosecution of delinquent conduct committed by escaping from a juvenile correctional facility "could in no way be construed as 'presumptively prejudicial'"). Until there is some delay that is presumptively prejudicial, "there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Because appellant's delay was insufficient to warrant further analysis under *Barker*, we overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the trial court's judgment.

/s/     Sharon McCally
        Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.
Do Not Publish — TEX. R. APP. P. 47.2(b).

8