**Opinion issued November 26, 2019**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-18-00540-CR**

———————————

**ROY EUGENE USSERY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1459846**

---

**O P I N I O N**

A jury convicted appellant Roy Eugene Ussery of aggravated sexual assault

of a child and assessed his punishment at thirty-five years' confinement. In his sole

issue on appeal, Ussery contends that he was denied a right to a speedy trial and

the trial court erred in denying his motion to dismiss the indictment based on that alleged violation. We affirm.

## Background

The State filed charges against Ussery on March 2, 2015, alleging that he had committed aggravated sexual assault of a child younger than six years old in 2008, and he was arrested on that charge in March 2015. After the case was reset multiple times, due to the trial court's sua sponte decision to reset in some instances and based in part on the effects of Hurricane Harvey, the case had still not gone to trial by early 2018. Accordingly, Ussery's attorney moved for dismissal of the case against Ussery for denial of a speedy trial.

The case proceeded to trial in June 2018. Immediately before trial, the trial court held a hearing on the motion to dismiss and, following the hearing, denied Ussery's motion to dismiss. In its findings of fact and conclusions of law, the trial court determined that the length of the delay—three and a half years—was excessive and weighed in favor of Ussery. The trial court further found that the State did not intentionally delay to gain an advantage, observing that the case was reset by the trial court judge who had been elected and sworn in in January 2017 because the new judge was not prepared to try certain kinds of cases. And the trial court found that Ussery had asserted his right to a speedy trial pro se. The trial court weighed these two factors in favor of Ussery as well. The trial court found,

2

however, that Ussery was not prejudiced by the delay, and the trial court weighed this factor heavily in favor of the State to support the denial of Ussery's motion to dismiss on speedy-trial grounds.

A jury subsequently convicted Ussery of the felony offense of aggravated sexual assault of a child younger than six years old, and it assessed his punishment at thirty-five years' confinement.

## Right to Speedy Trial

Ussery now appeals, asserting as his sole issue that the trial court erred in denying his motion to dismiss on speedy-trial grounds.

### A. Law Governing Right to Speedy Trial

The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial. U.S. CONST. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972); *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see also Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (right to speedy trial made applicable to states by Due Process Clause of Fourteenth Amendment). The Texas Constitution likewise guarantees the accused in all criminal prosecutions the right to a speedy and public trial. TEX. CONST. art. 1, § 10; *Cantu*, 253 S.W.3d at 280 n.16 (noting that right to speedy trial under Texas Constitution "exists independently of the federal guarantee, but this Court analyzes claim of a denial of the state speedy-trial right under the same four"

3

factors set out in *Barker v. Wingo*). "A speedy trial protects three interests of the defendant: freedom from oppressive pretrial incarceration, mitigation of the anxiety and concern accompanying public accusation, and avoidance of impairment to the accused's defense." *Cantu*, 253 S.W.3d at 280.

The right to a speedy trial cannot be quantified in days or months. *Barker*, 407 U.S. at 523. Thus, Texas courts "analyze federal constitutional speedy-trial claims 'on an ad hoc basis' by weighing and then balancing the *Barker v. Wingo* factors: 1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused." *Cantu*, 253 S.W.3d at 280; *see Gonzales*, 435 S.W.3d at 808.

"[B]efore a court engages in an analysis of each *Barker* factor, the accused must first make a threshold showing that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Gonzales*, 435 S.W.3d at 808 (internal quotation marks omitted); *Cantu*, 253 S.W.3d at 281. "There is no set time element that triggers the analysis," but the Court of Criminal Appeals has held that "a delay of four months is not sufficient while a seventeen-month delay is." *Cantu*, 253 S.W.3d at 281; *see also Gonzales*, 435 S.W.3d at 808 ("This Court has reiterated that 'presumptive prejudice' 'simply marks the point at which courts deem the delay unreasonable enough to trigger [further] enquiry.'").

4

"Once the *Barker* test is triggered, courts must analyze the speedy-trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of 'the conduct of both the prosecution and the defendant.'" *Cantu*, 253 S.W.3d at 281. The Court of Criminal Appeals has further instructed:

> No one factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Instead, the four factors are related and must be considered together along with any other relevant circumstances. As no factor possesses "talismanic qualities," courts must engage "in a difficult and sensitive balancing process" in each individual case.

*Id.*

If we determine that the accused's right to speedy trial was actually violated, we must dismiss the charging instrument with prejudice. *Id.* "Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error.'" *Id.* Thus, we must apply the balancing test "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.*

**B.      Standard of Review**

"In reviewing the trial court's ruling on appellant's federal constitutional speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Id.* at 282 (quoting *Zamorano v. State*, 84 S.W.3d 643 (Tex. Crim. App. 2002)). Review of the individual *Barker* factors involves both fact determinations and legal conclusions, but "[t]he balancing test as a whole . . . is a purely legal question." *Id.* (quoting *Zamorano*, 84 S.W.3d at 648 n.19).

"While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280; *see also Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973) (stating that "if an accused made a prima facie showing of prejudice, the State 'must carry the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay'"). The accused's burden of proof in showing that he asserted the right and in showing prejudice "'varies inversely' with the State's degree of culpability for the delay," and, thus, "the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*,

253 S.W.3d at 280–81 (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993) (citing *Doggett v. United States*, 505 U.S. 647, 657 (1992)).

**C.     *Barker* Factors**

We begin our analysis by examining each of the factors in turn, and then we must balance all of the factors together to determine whether Ussery's right to a speedy trial was violated in this instance.

*1.     presumptive prejudice and length of delay*

"[I]f the defendant can make a threshold showing of presumptive prejudice, a court must then proceed to consider each of the remaining *Barker* factors and weigh them." *Gonzales*, 435 S.W.3d at 808. The length of the delay is measured from the time the accused is arrested or formally accused. *Id.* at 809 (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)). A delay approaching one year from formal accusation or arrest until trial has been found to be excessive, triggering the *Barker* inquiry. *See Cantu*, 253 S.W.3d at 281; *Shaw v. State*, 117 S.W.3d 883, 888–89 (Tex. Crim. App. 2003); *Celestine v. State*, 356 S.W.3d 502, 507 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The trial court found that the delay here was approximately three and a half years in length between Ussery's arrest and trial, that Ussery was imprisoned for

three years and three months of that time,[1] and that this was presumptively unreasonable. The State argues, however, that the trial court did not properly apply the law to the facts in the record. The State asserts that Ussery sought or agreed to resets from March 2015 through April 2018, and that agreeing to reset the case is inconsistent with any assertion of the right to a speedy trial. *See Lopez v. State*, 478 S.W.3d 936, 942–43 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding that agreement to various resets is inconsistent with invocation of speedy-trial right). The record does not support the State's argument.

The record contains multiple reset forms that were signed by Ussery's counsel and, on some occasions, by Ussery himself, but the forms do not indicate that Ussery requested or agreed to the resets during the time period identified by the State. Only one reset in 2015 was noted as having been done at Ussery's request. At least two of the reset forms contain a handwritten statement that Ussery wished to assert his right to a speedy trial and that he did not agree to any further resets unless they were trial settings.[2] Ussery's counsel further testified at the

---

[1]    Ussery was released on bond on two different occasions, but both times he violated the terms of his bond and was returned to jail.

[2]    The May 2016 reset form contained a handwritten statement that Ussery "demands a speedy trial—will not sign any reset except a setting for jury trial." This form was signed by the court coordinator. In June 2016, Ussery again signed the reset form. Around this same time, Ussery filed a pro se application for writ of habeas corpus complaining about being held without bond. In July 2016, a reset form again reflected that Ussery "requests a speedy trial."

8

hearing on the motion to dismiss that, from the time he was appointed in August 2015 until the time of trial in June 2018, he never requested a continuance. He acknowledged that when the case was reset, he would sign the form, stating, "I was told the case was being reset and I signed. What else could have happened? That is just not the way it works."

At the speedy-trial hearing, the State relied on docket notations indicating that the resets were "agreed." The trial court discredited this evidence and instead found that "[a]ll the reset forms say agreed, whether they are or not," noting that some of the reset forms said "agreed" even though the forms themselves contained a statement that Ussery was demanding a speedy trial. Therefore, the record does not support the State's contention that multiple resets were agreed to by Ussery inconsistent with his assertion of his right to a speedy trial.

The record supports the trial court's finding that there was a delay of three and a half years between Ussery's arrest and his trial. This exceeds the "delay approaching one year" that courts have found excessive enough to trigger the *Barker* inquiry. *See Cantu*, 253 S.W.3d at 281 (observing that court had found delay of seventeen months was presumptively prejudicial and triggered further evaluation of *Barker* factors); *Shaw*, 117 S.W.3d at 888–89; *Celestine*, 356 S.W.3d at 507. The trial court correctly concluded that this factor weighs in favor of Ussery. *See Zamorano*, 84 S.W.3d at 649 ("Because the length of the delay

9

stretched well beyond the bare minimum needed to trigger judicial examination of the claim, this factor—in and of itself—weights heavily against the State.").

### 2. *reason for delay*

The burden of justifying the delay falls on the State. *Cantu*, 253 S.W.3d at 280. The particular reasons for the delay will determine how heavily this factor should weigh against the State. *Zamorano*, 84 S.W.3d at 649; *State v. Wei*, 447 S.W.3d 549, 554 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). While intentional or deliberate prosecutorial delay will weigh heavily against the State, neutral reasons, such as negligence or overcrowded courts, weigh less heavily. *Zamorano*, 84 S.W.3d at 649–50 (citing *Barker*, 407 U.S. at 531). "A valid delay should not weigh against the State at all." *Wei*, 447 S.W.3d at 554 (citing *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999)).

The trial court found that the State did not intentionally delay to gain an advantage, and the record supports this finding. The trial court further found that "no evidence [was] offered [as to] why the case could not be tried before 2016." The State did not provide any testimony regarding why the case was not tried between the time of Ussery's arrest in March 2015 and the first trial setting in late 2016. Both parties, however, asked the trial court to take judicial notice of the case file, which indicates that, although the case did not go to trial, other actions were taken. Ussery was released on bond shortly after his arrest in March 2015, and he

10

requested at least one continuance during this period. He subsequently violated the terms of his bond and was arrested again on an unrelated forgery charge, which led to his original trial counsel moving to withdraw.[3] The trial court appointed new counsel for Ussery in August 2015, and that counsel moved to have Ussery released on bond, filing a motion to that effect on October 27, 2015. Ussery was released on bond again in December 2015, but shortly thereafter violated the terms of the bond again and was rearrested. Also, it appears that the State made at least one plea offer to Ussery.

Regarding the period between late 2016 and the trial in June 2018, the trial court credited the testimony of the prosecutor assigned to the case, Allen Otto. Otto testified that none of the delay was attributable to the State and testified that for a period of a year and a half, from January 2017 through June 2018, the case was reset by the trial court. Otto testified that the case was set for a jury trial in January 2017, but there had been a change in the presiding judge for the court. Otto indicated that the new presiding judge wanted more time to prepare for difficult cases such as Ussery's, stating, "She was trying cases, she just wanted to make sure that she was legally and sufficiently prepared for worse cases." Otto also testified that Hurricane Harvey struck the Houston area in late August 2017, which

---

[3]     Ussery's original counsel moved to withdraw in July 2015, asserting that "defendant has lost contact with defense attorney, has not met financial obligations and has been arrested on a new law violation."

caused delays in many cases and resulted in further delays in being able to bring Ussery to trial.

We conclude that the record supports the trial court's findings of fact. Regarding the weight to be given to this factor, we observe that the length of delay can be "subdivided into justifiable and unjustifiable reasons" depending on the circumstances of the case. *Gonzales*, 435 S.W.3d at 810. There is no evidence that the State made any deliberate attempt to delay trial to hamper the defense. Nevertheless, the State failed to offer any explanation why the case was not tried between Ussery's arrest in March 2015 and January 2017, which weighs against the State. *See Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016) ("In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay."); *Gonzales*, 435 S.W.3d at 809 ("A more neutral reason [for delay] such as negligence or overcrowded courts should be weighted less heavily [than deliberate delay] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."); *see also Dickey v. Florida*, 398 U.S. 30, 38 (1970) ("Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable.").

In contrast, the State did offer valid reasons for delay starting in January 2017. The newly elected presiding judge delayed the trial to allow time to adequately prepare for difficult cases, such as Ussery's felony charge of aggravated sexual assault of a child under the age of six. *See Gonzales*, 435 S.W.3d at 810 (holding that "[u]njustifiable reasons for delay count towards the 'length of delay,' while justifiable reasons for delay do not," and indicating that delay in complex cases may be justifiable in some circumstances); *see also Chapman v. Evans*, 744 S.W.2d 133, 136 (Tex. Crim. App. 1988) (en banc) (observing that constitutional right to speedy trial governs entire criminal justice process, not just prosecutorial delays). Additional delays occurred following the damage caused by Hurricane Harvey. *See Wei*, 447 S.W.3d at 554 ("A valid delay should not weigh against the State at all."). Accordingly, we agree with the trial court that this factor weighs in favor of Ussery, albeit not as heavily.

*3.    assertion of right*

The accused has the responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 282 (noting that nature of speedy-trial right makes it impossible to pinpoint precise time when right must be asserted, but "the burden of protecting the right" does not fall "solely on defendants" because "[t]he defendant has no duty to bring himself to trial; that is the State's duty"). The Court of Criminal Appeals explains:

Whether and how a defendant asserts this right is closely related to the other three factors because the strength of his efforts will be shaped by them. "The more serious the deprivation, the more likely a defendant is to complain." Therefore, the defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. . . . Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal.

*Id.* at 282–83. A speedy-trial demand should be unambiguous. *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013).

The trial court found that Ussery submitted between eleven and thirteen pro se motions demanding a speedy trial. The record supports this finding and demonstrates that Ussery first made a speedy-trial request in May 2016 that was noted in writing on the reset form signed by the court coordinator and filed with the trial court. In addition to his pro se motions, Ussery filed a petition for writ of mandamus seeking a ruling on his motions for a speedy trial,[4] and he filed a letter with the trial court asking that his motions be heard. Ussery's trial counsel filed a motion to dismiss for denial of a speedy trial on May 18, 2018, less than a month

---

[4]     *See In re Ussery*, No. 01-17-00477-CR, 1-17-00478-CR, & 01-17-00479-CR, 2017 WL 4820173, at *1 (Tex. App.—Houston [1st Dist.] Oct. 26, 2017, orig. proceeding) (stating that Ussery sought mandamus relief ordering "the trial court to stop the State's delays and to go forward with trial, and to order the trial court to release him on a pretrial personal recognizance bond," and denying requested relief on ground that "Ussery [had] not established his entitlement to relief because he [did] not present[] a record sufficient to show that he requested relief in the trial court regarding delays and bail. The record does not establish that Ussery submitted his requests to the trial court or when relief was requested.").

before the case went to trial. Ussery's counsel asserted at the hearing on the motion to dismiss that he had adopted Ussery's pro se motions in the months leading up to trial in 2018, but the clerk's record does not contain any written filing to that effect. The trial court thus found that "whether the motions were adopted by Defense counsel or not, . . . the number of motions filed by Mr. Ussery, his effort to have the Court of Appeals even intervene, would certainly be evidence of his assertion of his right to a speedy trial."

The State argues, however, that "a reset form does not put the trial court on notice that a defendant is claiming a constitutional right any more than it would preserve an objection," and it notes that the case reset forms were signed by the court coordinator and not the trial judge. The State further argues that Ussery's pro se motions were not a timely invocation of his right to a speedy trial because Ussery had appointed counsel and he was not entitled to hybrid representation. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) (holding that "a defendant has no right to hybrid representation" and, "as a consequence, a trial court is free to disregard any *pro se* motions presented by a defendant who is represented by counsel"). The State also points to Otto's testimony that, while he was the prosecutor assigned to the case, Ussery's counsel told the State repeatedly that he did not intend to adopt the pro se motions, and, in fact, he did not do so until May 2018, one month before trial, when counsel moved to dismiss the

indictment on speedy-trial grounds. *See Cantu*, 253 S.W.3d at 283 ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one.").

We first observe that asserting the right to speedy trial does not necessarily require filing a motion. Courts have recognized that the right to speedy trial can be asserted in other ways. *See id.* ("Although one cannot file a motion for a speedy trial until formal charges are made, the right to one can be asserted in other ways."); *State v. Flores*, 951 S.W.2d 134, 142 (Tex. App.—Corpus Christi 1997, no pet.) ("In this case, Flores and his sister inquired about his case several times," in the time leading up to Flores's indictment, including making phone calls to district attorney's office, and their actions "indicate that Flores was interested in a speedy resolution of his case, if in fact charges were going to be brought against him"); *cf. Dillingham v. United States*, 423 U.S. 64, 65 (1975) (holding that "invocation of the speedy trial provision . . . need not await indictment, information, or other formal charge"). However, these are cases in which the accused asserted a speedy-trial interest in the absence of an attorney of record.

The State is correct that a trial court may generally disregard pro se motions presented by a defendant who is represented by counsel, as Ussery was. *See Robinson*, 240 S.W.3d at 921–22. Several sister courts of appeals have declined to consider motions for speedy trial filed by pro se defendants who were currently

16

represented by counsel. *See Daniels v. State*, No. 04-18-00474-CR, 2019 WL 1139553, at *4 n.5 (Tex. App.—San Antonio Mar. 13, 2019) (mem. op., not designated for publication); *Reitz v. State*, No. 06-18-00088-CR, 2019 WL 961515, at *4–5 (Tex. App.—Texarkana Feb. 28, 2019, no pet.) (mem. op., not designated for publication).[5]

Moreover, a motion for speedy trial "must be 'presented' to the trial court to preserve a complaint for appellate review, and presentment means more than mere filing." *Guevara v. State*, 985 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see Zamorano*, 84 S.W.3d at 652 (quoting *Cook v. State*, 741 S.W.2d 928, 940 (Tex. Crim. App. 1987) (holding that "assertion-of-right factor weighs against appellant where 'there is no evidence beyond the two motions for speedy trial filed with the district clerk that appellant asserted his right to a speedy trial by requesting hearings to present evidence on the matter'"), *vacated and remanded on other grounds*, 488 U.S. 807 (1988)). Ussery's pro se motions were never ruled on by the trial court. *See* TEX. R. APP. P. 33.1. There is no indication that the trial court was made aware of Ussery's speedy-trial request until counsel filed the motion to dismiss and set the case for a hearing in May 2018, which was after the trial court had made several sua sponte resettings of the trial date.

---

[5] We acknowledge that these unpublished cases have no precedential value, but their similar facts make them instructive. *See Roberson v. State*, 420 S.W.3d 832, 837 (Tex. Crim. App. 2013).

In light of all of these facts, we agree with the trial court that Ussery's pro se motions constituted some effort to invoke his right to a speedy trial, but that invocation was not unambiguous, *see Henson*, 407 S.W.3d at 769, because the pro se motions were not required to be considered by the trial court and it is unclear if, or when, those motions or other assertions of his right to speedy trial were presented to the trial court. Ussery's counsel decided not to adopt the pro se motions for a speedy trial at the time Ussery filed them, and counsel affirmatively represented to the State that he did not intend to adopt the pro se motions. The record is silent regarding why counsel postponed affirmatively asserting Ussery's right to a speedy trial. *See id.* ("[T]he deprivation of a speedy trial often can benefit the appellant."). Counsel subsequently filed a motion to dismiss contemporaneously with adopting the pro se motions in May 2018, after the case had been pending more than three years. Therefore, Ussery asserted his right to speedy trial, but this factor does not weigh strongly against the State.

### 4. *prejudice to accused*

"Because 'pretrial delay is often both inevitable and wholly justifiable,' the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant." *Cantu*, 253 S.W.3d at 285 (quoting *Doggett*, 505 U.S. at 656). We must analyze this factor "in light of the defendant's interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to

18

minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired." *Id.* The last form of prejudice "is the most serious 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id.* (quoting *Dragoo v. State*, 96 S.W.3d 308, 316 (Tex. Crim. App. 2003)).

The defendant has the burden of showing prejudice but need not show actual prejudice. *Balderas*, 517 S.W.3d at 772; *Cantu*, 253 S.W.3d at 280; *see also McKenzie*, 491 S.W.2d at 123 (stating that "if an accused made a prima facie showing of prejudice, the State 'must carry the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay'"). Conclusory assertions are not sufficient to carry a defendant's burden to show that he was prejudiced by delay. *Munoz*, 991 S.W.2d at 829.

The trial court found that Ussery was not prejudiced by the delay and weighed this factor in favor of the State. The trial court focused its findings on whether Ussery's defense will be impaired by the delay, and in particular on the evidence of an extraneous offense that the State had originally intended to introduce against Ussery. The extraneous offense involved Ussery's conviction for a similar crime against a family member that Ussery committed as a juvenile. While Ussery's case was pending, the State discovered that the complainant in the

19

extraneous offense had given some indication that she had recanted her accusation against Ussery in the years since his conviction, and then it discovered that the complainant in the extraneous offense had died. In light of those facts, the State then agreed not to use the extraneous-offense evidence against Ussery. The trial court found that the prejudice factor weighed in favor of the State.

Ussery argues that the trial court erred in making its conclusion. He argues that the delay was so excessive that it is presumed prejudicial. The Court of Criminal Appeals, citing United States Supreme Court authority, has held, "In certain instances, the length of delay may be so excessive that it 'presumptively compromises the reliability of a trial in ways that neither party can prove or identify,'" and that, "[i]n such instances, the defendant is absolved from the requirement to demonstrate prejudice." *Gonzales*, 435 S.W.3d at 813 (quoting *Shaw*, 117 S.W.3d at 890, and citing *Doggett*, 505 U.S. at 655–65).

The *Gonzales* court examined several cases in which this principle was applied. *See id.* In *Doggett*, there was an eight-and-a-half-year delay between the accused's indictment and arrest, and the Court "agreed with earlier courts that the delay was solely attributable to the State's negligence." *Id.* (citing *Doggett*, 505 U.S. at 650–53). The Court of Criminal Appeals further discussed *Doggett*, stating:

> When the Court examined the prejudice component of the *Barker* test, it noted that "affirmative proof of particularized prejudice is not essential to every speedy trial claim," and that "negligence is not automatically tolerable simply because the accused cannot

20

demonstrate exactly how it has prejudiced him." And while conceding that "time can tilt the case against either side," the [*Doggett*] Court concluded that "one cannot generally be sure which [party] it has prejudiced more severely." The Court also acknowledged that Doggett "did indeed come up short" with respect to proving affirmative prejudice, although it still held in his favor and granted relief.

*Id.* (internal citations to *Doggett* omitted).

The Court of Criminal Appeals further examined other federal cases involving delays of more than five years in cases in which the delays were due exclusively to the State's negligence. *Id.* at 814; *see United States v. Cardona*, 302 F.3d 494, 498 (5th Cir. 2002) (five-year delay between indictment and arrest, excessive delay was due to State's negligence, court reasoned that because prejudice caused by excessive delay compounds over time, a five-year delay was sufficient to absolve appellant of his burden to prove prejudice); *United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009) (presumed prejudice when nearly ten years passed between indictment and trial, with accused spending eight of those years in custody). The Court of Criminal Appeals then held that "the State's negligence in failing to pursue Appellant with diligence for six years" resulted in presumed prejudice that the State had failed to rebut, and it concluded that the appellant's right to a speedy trial had been violated. *Gonzales*, 435 S.W.3d at 814.

This case, however, is distinguishable from *Gonzales* and the cases it cites. The total delay was three and a half years. And, as discussed above, approximately

21

half of that time was due to the new trial judge's need to be fully prepared and the damage caused by Hurricane Harvey. Therefore, the total delay to be counted against the State is far less than the five, eight, or ten years in the cases cited in *Gonzales*. *See* 435 S.W.3d at 813–14. *But see Shaw*, 117 S.W.3d at 889–90 (stating that "we must presume the lengthy delay here did adversely affect appellant's ability to defend himself" in case involving delay of just over three years); *Zamorano*, 84 S.W.3d at 654 (stating that length of delay itself—just under three years between arrest and speedy-trial hearing and almost four years between arrest and plea hearing—supported inference of actual prejudice). Furthermore, although Ussery was incarcerated for the majority of those three years, that is largely because he repeatedly violated the terms of his bond. The record demonstrates that while the aggravated assault case was pending, Ussery was charged with two additional crimes—forgery and possession of a controlled substance—and that he violated the terms of his bond by committing these new offenses and failing a drug test. This case does not implicate the type of extraordinary delay discussed in *Doggett* as giving rise to a presumption of prejudice. *See Doggett*, 505 U.S. at 658.

And even if the length of delay alone were sufficient to demonstrate prejudice, we conclude that evidence supports the trial court's affirmative finding that Ussery was not prejudiced. Although excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, such

presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria. *See id.* at 656. The State may demonstrate that any delay was extenuated, as by the defendant's acquiescence, or it may persuasively rebut any presumption of prejudice. *See id.* at 658.

The State presented evidence, in the form of the testimony of Allen Otto and the documents filed in the case, that, at least beginning in the summer of 2016, the State attempted to work with Ussery's counsel to bring the case to trial and ensure that Ussery had the information necessary to defend himself. The record further demonstrates that, although Ussery made pro se assertions of his speedy-trial right, these assertions were not adopted by his trial counsel or presented to the trial court until May 2018, less than a month before trial. Ussery argues that he suffered some actual prejudice because he might have been able to call the complainant from the extraneous offense to testify on his behalf, but it is difficult to imagine how that complainant's testimony would have been helpful to Ussery, even if she had recanted. We conclude, as the trial court did, that this factor weighs in favor of the State.

### 5. *balancing the factors*

Consideration of the "balancing test as a whole . . . is a purely legal question." *Cantu*, 253 S.W.3d at 282. The accused's burden of proof in showing that he asserted the right and in showing prejudice "'varies inversely' with the

State's degree of culpability for the delay," and, thus, "the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81. And we must apply the balancing test "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.*

Looking at all the factors together, we conclude that although the delay of three and a half years was excessive, the State bore a low degree of culpability for the delay. *See id.* A portion of the delay was not explained by the State, but there was no evidence of bad faith or intentional delay on its part, and a year and a half of the delay was due to reasons such as a change in the presiding judge of the court and a natural disaster that caused widespread delays beyond the control of the State. Regarding Ussery's diligence in asserting his right, we observe that he did make numerous assertions of his right. The record also demonstrates, however, that those assertions were, to some degree, undermined by uncertainty as to whether these assertions were ever presented to the trial court and by his counsel's representations that counsel did not intend to adopt the pro se motions for speedy trial and by counsel's failure to make any speedy trial request before filing a motion to dismiss. Finally, the record does not indicate that Ussery suffered

24

"serious prejudice beyond that which ensued from the ordinary and inevitable delay." *See Barker*, 407 U.S. at 532; *McKenzie*, 492 S.W.2d at 123.

Accordingly, we conclude that Ussery's right to speedy trial was not violated. We overrule his sole issue on appeal.

### Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Publish.  TEX. R. APP. P. 47.2(b).