**Affirm and Opinion Filed May 31, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00235-CR**

**HUI ZHU LU, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 6**
**Collin County, Texas**
**Trial Court Cause No. 006-85110-2021**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Smith, and Breedlove
Opinion by Justice Breedlove

Appellant Hui Zhu Lu was charged and convicted of prostitution after a jury trial. The trial court sentenced her to six months' confinement, probated for 12 months. Appellant appeals, complaining in four issues that: (1) the trial court erroneously refused to suppress evidence obtained due to an officer's illegal conduct; (2) the trial court erred in refusing to charge the jury pursuant to TEX. CODE CRIM. PROC. ANN. art. 38.23; (3) the jury's determination that appellant committed prostitution is not sufficiently supported by the evidence; and (4) appellant's right to a speedy trial was violated. We affirm the trial court's judgment.

# I.    BACKGROUND

On January 17, 2020, appellant was arrested during a sting operation performed by Plano police officers at the Hands-On Wellness Center in Plano. During the sting, Detective George Johnson entered the massage parlor and requested a 30-minute massage from appellant. She led him to a closed room where he undressed completely, laid face-down on the massage table, and covered his buttocks with a towel. Appellant returned to the room and began massaging Johnson. She then removed the towel, exposing his buttocks. While massaging him, she grazed his genitals several times. After about twenty minutes, appellant dimmed the lights and instructed Johnson to turn over onto his back, which exposed his genitals. She then asked Johnson what he wanted, to which he replied, "Can I get a hand job?" She asked if he wanted her to take her clothes off. He said no and then repeated, "A hand job, and is $60 okay?" She replied, "Yep, hand job, $60, okay." Johnson then excused himself to the restroom where he called the signal for his fellow officers to arrest appellant.

Appellant was charged with prostitution and pled not guilty. On February 8, 2022, a jury found her guilty of prostitution. She then entered into an agreement with the State regarding punishment by which the court abided. She was sentenced to six months' confinement, probated for 12 months with conditions.

Appellant appealed the trial court's sentence on March 21, 2022.  In four issues, appellant complains that:

1. A Plano officer exposed his penis without permission in a public place oblivious to other persons present in the establishment and without concern as to who it may offend.  His conduct constituted disorderly conduct with no legal exception for law enforcement and was directly calculated towards appellant in the furtherance of his investigation.  The trial court erroneously refused to suppress the evidence attained due to the officer's illegal conduct pursuant to TEX. CODE CRIM. PROC. ANN. art. 38.23.

2. A Plano officer exposed his penis without permission in a public place oblivious to other persons present in the establishment and without concern as to who it may offend.  His conduct constituted disorderly conduct with no legal exception for law enforcement and was directly calculated towards appellant in the furtherance of his investigation.  The trial court refused to charge the jury pursuant to TEX. CODE CRIM. PROC. ANN. art. 38.23.

3. The jury's determination that appellant committed prostitution is not sufficiently supported by the evidence.

4. The delay of 25 months which was almost solely attributable to the State, their initial defective information, their bumbling discovery mishaps, and finally their miscommunication with arresting officer which caused them to beg for a continuance was excessive and violated appellant's right to a speedy trial.

In response, the State argues that:

1. The State did not violate any laws. Appellant alleges wrongful conduct to have occurred prior to her criminal act, and article 38.23 does not apply to conduct occurring prior to the criminal act.

2. There were no disputed issues of material fact, and article 38.23 would not apply because appellant alleged wrongful conduct to have occurred before the criminal offense took place.

3. The State presented sufficient evidence for a reasonable jury to determine without speculation that she knowingly agreed to engage in sexual conduct for a fee.

4. The COVID-19 pandemic, the trial court's schedule, and agreed resets were the primary reasons for the delay. Appellant caused further delay by filing a motion to quash immediately before her first trial date. After subsequently asserting her speedy trial rights, the State did seek a continuance for one week, but then appellant sought a continuance, which delayed her trial for another three months. Appellant failed to assert her speedy trial rights for 20 months, and then only requested a speedy trial after filing a motion to quash. Appellant's conduct indicated that she was not interested in a speedy trial, but rather avoiding trial by way of a speedy trial dismissal or other procedural tactic. She suffered no prejudice from any delay.

## II. APPLICABLE LAW AND DISCUSSION

We address each of appellant's four issues below. Because issues three and four, if sustained, require us to render a judgment of acquittal, we will address those first before turning to issues one and two, which, if sustained, require us to remand for a new trial.

## A. Legal Sufficiency (Appellant's Third Issue)

### 1. Applicable Law

Appellant argues in her third issue that there was legally insufficient evidence for a jury to find her guilty of prostitution. A person commits the offense of prostitution if she knowingly offers or agrees to receive a fee to engage in sexual conduct. TEX. PENAL CODE § 43.02(a). In assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 243–44 (Tex. Crim. App. 2019). This standard requires that we defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (citing *Jackson*, 443 U.S. at 319). Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) (internal citations omitted). Proof of mental state will almost always depend upon circumstantial evidence. *Duntsch v. State*, 568 S.W.3d 193, 216 (Tex. App.—Dallas 2018, pet. ref'd) (citing *Lincoln v. State*, 307 SW.3d 921, 924 (Tex. App.—Dallas 2010, no pet.)).

## 2. Discussion

Appellant does not challenge the legal sufficiency of the evidence of any particular element of the offense. *See* TEX. PENAL CODE ANN. § 43.02(a). Rather, appellant challenges whether there was enough evidence for the jury to find that appellant possessed the requisite command of English to engage in the alleged transaction. She also argues that Johnson did not know her or "how much English language" she understood, and that it was "unclear" whether she agreed to the transaction or was only repeating what Johnson said. However, the jury was free to believe or disbelieve any evidence of a language barrier. *See Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) ("As the sole judge of the weight and credibility of the evidence, the jury is free to believe or disbelieve the testimony of all witnesses and to accept or reject any or all of the defensive evidence.").

Under the circumstances, the jury could have reasonably concluded appellant possessed the requisite understanding of English to be able to engage in a transaction of the type that would violate penal code § 43.02(a) based on the testimony of Johnson and the audio recording in evidence. The evidence is legally sufficient to support a prostitution conviction. *See* TEX. PENAL CODE § 43.02(a) ("A person commits an offense if the person knowingly offers or agrees to receive a fee from another to engage in sexual conduct."). We overrule appellant's third issue.

## B. Speedy Trial (Appellant's Fourth Issue)

### 1. Applicable Law

Appellant argues in her fourth issue that her case should have been dismissed because her rights to a speedy trial were violated. The Sixth Amendment to the U.S. Constitution guarantees the accused in a criminal prosecution the right to a speedy trial. *See* U.S. CONST. amend. VI. The right to a speedy trial attaches once a person is either arrested or charged. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). Courts determine a speedy trial claim on an ad hoc basis by analyzing and weighing four factors: (1) the length of the delay; (2) the State's reason for the delay; (3) the defendant's assertion of her right to a speedy trial; and (4) prejudice to the defendant because of the length of delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Cantu*, 253 S.W.3d at 280. The State has the burden to justify the length of the delay, while the defendant has the burden to prove she asserted her right and has been prejudiced. *Cantu*, 253 S.W.3d at 280.

We apply a bifurcated standard of review in a speedy trial analysis: we employ an abuse of discretion standard for the factual components and a de novo standard for the legal components. *State v. Lopez*, 631 S.W.3d 107, 113–14 (Tex. Crim. App. 2021). Thus, we give almost total deference to the trial court's historical findings of fact that are supported by the record. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). The balancing test of the *Barker* factors is a purely legal question

that we review de novo. *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016).

### 2. Discussion

#### i. Length of delay

To trigger a speedy trial analysis, the defendant must make an initial showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Gonzales*, 435 S.W.3d at 808 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)); *see also Barker*, 407 U.S. at 530–32 (holding that length of delay is the "triggering mechanism" for an analysis of the other factors). Here, the State does not contend the 25 month interval between accusation and trial was an insufficient delay for appellant to make the initial showing required by the first *Barker* factor. We agree.

#### ii. Reason for delay

We do not attribute equal weight to all reasons for delay: an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts or negligence, is weighed less heavily against the State; and a valid reason is not weighed against the State at all. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). The timeline of this case can be divided into several distinct segments, and we will review the weight attributed to each segment individually.

*January 17, 2020–March 30, 2020*

The State charged appellant approximately two months after her arrest. This is an expected and acceptable delay. *Shaw v. State*, 117 S.W.3d 883, 889–90 (Tex. Crim. App. 2003) (determining that the initial three months it took to charge an appellant could not be counted against the State "since the State was entitled to a reasonable period in which to prepare its case"). Accordingly, we hold this time does not weigh against the State.

*March 31, 2020–December 3, 2020*

After appellant was charged, another eight months passed before the case was set for trial. Both appellant and the State agree that this delay was due to the COVID-19 pandemic and its accompanying limitations on the entire judicial system. "Delay caused by the onset of a pandemic cannot be attributed as fault to the State." *State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.). Therefore, we hold this period does not weigh against the State.[1] Further, it appears from the record that appellant agreed to several resets during this time. Because appellant agreed to the resets, the remaining time leading up to the December 4, 2020 hearing likewise does not weigh against the State. *See Hogenson v. State*, No. 05-14-00981-

---

[1] We agree with the State that this case is readily distinguishable from *Huynh v. State* in which we held that "delay following the onset of a pandemic, after a reasonable time to put safeguards in place, should be attributable to the State . . . ." No. 05-21-00991-CR, 2022 WL 17261166, at *5 (Tex. App.—Dallas Nov. 29, 2022, no pet. h.) (mot. for reh'g pending). In that case, "the case likely could have been tried before a jury prior to the onset of the pandemic" when the appellant asserted his speedy trial rights well before the onset of the pandemic and only three months after his arrest. In this case, the pandemic began mere weeks before appellant was formally charged, and she waited 18 months to assert her speedy trial rights.

CR, 2015 WL 3900352, at *3 (Tex. App.—Dallas June 25, 2015, no pet.) (mem. op., not designated for publication) (citing *Celestine v. State*, 356 S.W.3d 502, 507 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that the months of delay that the defendant agreed to cannot be counted against the State)).

*December 4, 2020–August 1, 2021*

On December 4, 2020, the trial court set the case for trial on August 2, 2021. No reason was given for the eight-month delay between these two dates. Accordingly, this delay is treated as having a neutral reason and weighs only slightly against the State. *See Balderas*, 517 S.W.3d at 768 ("In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." [internal quotation omitted]).

*August 2, 2021–November 1, 2021*

Appellant filed a motion to quash on July 27, 2021, which the trial court granted on July 29, 2021. This caused the cancellation of her August 2, 2021 jury trial. The State refiled charges against appellant on August 6, 2021, and appellant subsequently invoked her speedy trial rights on August 23, 2021. The trial court then set trial for November 1, 2021.

Appellant argues that because the initial charging instrument was faulty, the time between the trial settings should be weighed against the State. However, appellant provides no citation to any legal authority to support this proposition. The

–10–

State argues that appellant could have filed her motion to quash anytime during the prior sixteen months but chose not to do so until less than a week before trial, practically guaranteeing that her trial date would be delayed. The State further asserts that appellant could have asked the trial court for a less drastic remedy, such as agreeing to have the State amend the information pursuant to article 28.10. The State cites *Munoz* for the proposition that because appellant was responsible for the delays during this period, it should not weigh against the State. *See Munoz v. State*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) ("delay which is attributable in whole or in part to the defendant may even constitute a waiver of a speedy trial claim"). We agree and conclude that this three-month delay does not weigh against the State. [or similar conclusion].

### *November 1, 2021–November 8, 2021*

On October 21, 2021, the State requested a continuance of the November 1, 2021 trial setting due to the unavailability of Johnson, the State's key witness. Appellant argues that this period should weigh against the State because the State had input in the trial setting date and should have ensured its key witnesses were available before scheduling trial on that date. Appellant offers no legal authority to support this argument. According to the State, the scheduling conflict was an unintentional result of a miscommunication with Johnson about his availability. Accordingly, this brief delay should not weigh against the State because material witness unavailability is a valid reason for delay. *See Barker*, 407 U.S. at 531.

*November 8, 2021–February 7, 2022*

Appellant filed a motion for continuance as a result of late disclosure of evidence that was granted on November 5, 2021. According to the trial court, the court was initially under the false impression that the State had intentionally withheld evidence, but the trial court later determined that the disclosure was actually in response to a late defense request. According to appellant, appellant requested additional discovery in October 2021, and when the State produced the requested evidence, appellant requested a continuance "with the belief that it was necessary to preserve error on the late disclosure of evidence." We defer to the trial court's oral finding that the delay was caused by a late discovery request from appellant rather than an intentional late disclosure of evidence by the State. *See Gonzalez*, 435 S.W.3d at 808 (deferring to the trial court's findings of fact that are supported by the record). Therefore, this delay weighs against appellant rather than against the State. *See Munoz* 991 S.W.2d at 822.

Finally, there is no evidence that the State deliberately delayed appellant's trial for strategic gain. Because all of the periods discussed above either do not weigh against the State or do so only slightly, we conclude the second *Barker* factor weighs only slightly against the State. *See Conatser*, 645 S.W.3d at 930.

> iii. *Defendant's assertion of the right to a speedy trial*

The third Barker factor examines the defendant's assertion of her right to a speedy trial. Appellant's assertion of her right should receive "strong evidentiary

–12–

weight" in our determination of whether she has been deprived of that right.  *See Balderas*, 517 S.W.3d at 771.  If a defendant does not timely demand a speedy trial, we must assume that she did not really want one.  *Id.*  And the longer the delay before trial, the more likely it would be that a defendant wanting a speedy trial would request it.  *Id.*

In this case, appellant first raised the issue of a speedy trial approximately 18 months after she had been arrested and 16 months after she had been initially charged.  Less than two months after invoking her rights, she requested dismissal.  Although the appellant did not file for a dismissal first instead of a speedy trial, the very short time between when appellant invoked her rights and when she requested dismissal has the same effect—it weakens her speedy trial claim because it shows a desire to have no trial instead of a speedy one.  *See Cantu*, 253 S.W.3d at 283.  We conclude that the third *Barker* factor weighs against her.

### iv.    *Prejudice to the defendant*

The fourth and final Barker factor we consider is the prejudice caused to the defendant as a result of the State's delay.  The defendant has the burden of showing prejudice.  *Cantu*, 253 S.W.3d at 280.  We assess this factor in light of the three interests the right to a speedy trial is intended to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired.  *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017) (citing *Barker*, 407 U.S. at 532).

Appellant's husband, Lee Harrington, testified at the hearing; his testimony is the only evidence in the record purporting to show prejudice. He offered no testimony suggesting either that his wife was subject to oppressive pretrial incarceration or that her defense was in any way impaired by the delay. *See id.* He did testify that she experienced some amount of stress or anxiety. However, "evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 286.

Our review of the record indicates that, whether in response to questions from his wife's attorney or the prosecution, Harrington was unable to identify any significant prejudice:

- The case has caused emotional distress for himself and appellant because appellant would have to return to China if she was convicted, and she would not be able to return or visit her son.

- Appellant has been under treatment for depression for several years prior to the arrest, as well as hormone therapy, both of which require medication that, if discontinued, would cause her harm.

- The case has exponentially increased the amount of stress appellant experiences.

- The motion to quash, being filed immediately preceding trial, caused a lot of stress for appellant.

- A witness named Joy who worked at the massage parlor at the time of appellant's arrest has since moved to California, and it would be hard

to get her to Texas for trial.  However, Harrington also testified that "if you have enough notice, it could be done."

- Harrington has experienced a breakdown because his son died and his business is floundering.

None of these facts appear to be unique to the delay and instead are either caused by unrelated outside factors or are typical of all criminal defendants.  We conclude that appellant failed to identify any significant prejudice caused by the State's delay in bringing her to trial.  This factor weighs heavily against her.  *See Conatser*, 645 S.W.3d at 931.

After applying the four factor *Barker* balancing test, we conclude that appellant failed to carry her burden to establish both that she adequately asserted her right to a speedy trial and that the State's delay caused her prejudice. We overrule appellant's fourth issue.

## C. Motion to Suppress Evidence (Appellant's First Issue)

In her first issue, appellant argues that the trial court erred in denying her motion to suppress evidence[2] collected by Johnson during the sting because the evidence was obtained in violation of article 38.23 of the Code of Criminal Procedure.

---

[2] Appellant does not elaborate, either before the trial court or before this court, on what specific evidence she sought to have suppressed.  However, we will interpret this argument broadly to mean a request for suppression of both Johnson's testimony regarding his interactions with appellant during the sting and the audio recording made during the sting.

–15–

### 1. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Staton*, 599 S.W.3d 614, 616 (Tex. App.—Dallas 2020, pet. ref'd) (citing *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019)). We give almost total deference to the trial court's determination of historical facts and review de novo the application of the law to the facts. *Id.* We view the record in the light most favorable to the trial court's ruling. *Id.* When, as in this case, the trial court does not make explicit findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). We will sustain the ruling of the trial court if it is correct under any applicable theory of law. *Id.*

### 2. Applicable Law

Texas law prohibits the use of evidence "obtained" in violation of Texas or Federal law. TEX. CODE CRIM. PROC. ANN. art. 38.23. But article 38.23 does not protect a defendant whose unlawful acts occur after (or as a result of) the illegal acts of a police officer. *Day v. State*, 614 S.W.3d 121, 128–29 (Tex. Crim. App. 2020). "Article 38.23 contemplates that a crime has already been committed; that evidence of that crime exists; and that officers violate the law in attempting to obtain evidence of the previously committed crime." *Id.*; *see also State v. Iduarte*, 268 S.W.3d 544, 551 (Tex. Crim. App. 2008) ("The exclusionary rule was designed to protect

individuals from the use at trial of evidence that was obtained in an unlawful manner. It does not, however, provide limitless protection to one who chooses to react illegally to an unlawful act by a state agent."). Moreover, evidence cannot be "obtained" prior to the crime taking place. *See Day*, 614 S.W.3d at 128–29.

### 3. Discussion

Appellant argues that the evidence supporting her conviction for prostitution that was obtained during the sting should be excluded because it was obtained through Johnson's illegal act. Appellant's argument fails in multiple respects.

First, appellant's argument requires us to accept the premise that Johnson's conduct constituted disorderly conduct.[3] We decline to do so. Johnson testified that he was led into a private room in the massage parlor, waited until appellant left the room, and then disrobed completely before laying down on the massage table and covering his buttocks with a towel. The State argues that these set of facts are not unique to Johnson—in fact, it is common practice for patrons obtaining a full-body massage to disrobe completely, or nearly so, while in the comfort of a private massage room. On this record, we conclude that the private room where the offense occurred is not a public place under the meaning of Texas Penal Code § 42.01.

---

[3] Appellant also accuses Johnson of committing prostitution and solicitation of prostitution, but she specifically frames her argument for suppression based on allegations of disorderly conduct. Therefore, we limit our analysis to the argument specifically proffered by appellant.

Further, the record is clear that the eventual exposure of Johnson's buttocks and genitals to appellant was not the result of any affirmative act on Johnson's part but of the actions of appellant. Appellant removed the towel covering Johnson's buttocks, and appellant instructed Johnson to turn over onto his back without replacing the towel over his genitals. The evidence in the record demonstrates, therefore, that Johnson did not intentionally or knowingly expose his anus or genitals in violation of Texas Penal Code § 42.01.

Second, appellant's argument fails because, even if we were to hold that Johnson's conduct did constitute disorderly conduct, his illegal action took place prior to appellant's commission of the offense. The exposure of Johnson's buttocks and genitals occurred prior to the conversation between Johnson and appellant where she allegedly agreed to perform a sexual act for a fee. Therefore, any evidence of the crime could not have been obtained at that time and is admissible under TEX. CODE CRIM. PROC. ANN. art. 38.23. *See Day*, 614 S.W.3d at 128–29.

The trial court did not abuse its discretion in overruling appellant's objection regarding the admission of evidence obtained during the sting. *See Lerma*, 543 S.W.3d at 189–90. We overrule appellant's first issue.

## D. Article 38.23 Jury Instruction (Appellant's Second Issue)

In her second issue, appellant contends the trial court erred in not charging the jury pursuant to article 38.23 of the Code of Criminal Procedure on the issue of whether evidence offered by the State was obtained illegally.

### 1. Standard of Review

In reviewing jury-charge error, we first determine whether error exists. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (internal citations omitted). If we find error, we must then determine whether the error caused sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743. The standard of review differs depending on whether the defendant made a timely objection at trial. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza*, 686 S.W.2d at 171). If the error was the subject of a timely objection, reversal is required if there is some harm to the defendant as a result of the error. *Id.* (citing *Almanza*, 686 S.W.2d at 171); TEX. CODE CRIM. PROC. ANN. art. 36.19. If no proper objection was made at trial, reversal is required only if the error is so egregious that the defendant was denied a fair and impartial trial. *Id.*

### 2. Applicable Law

Under article 38.23(a), when the evidence raises a question on whether evidence was illegally obtained, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of [Chapter 38's provisions], then and in such event, the jury shall disregard any such evidence so obtained." *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007) (internal citations omitted). "To be

entitled to a jury instruction under article 38.23(a), the defendant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the contested fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible." *Madden*, 242 S.W.3d at 510. If there are no disputed factual issues, the trial judge alone determines the legality of the conduct as a question of law. *Id.* And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the evidence's admissibility. *Id.* The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct. *Id.* at 511.

### 3. Discussion

Here, although appellant requested an article 38.23 instruction, she did not raise any specific fact dispute before the trial court. Further, appellant does not identify any disputed fact issue related to Johnson's conduct. She challenges only the legality of the actions, not whether or how they occurred. Therefore, there was no fact issue to be decided by the jury, and the judge correctly ruled that the legality of Johnson's actions was a determination to be made by the court as a matter of law.

We therefore conclude appellant was not entitled to a jury instruction under article 38.23. The trial court did not err by refusing to give appellant's requested instruction. *See id*. at 510. We overrule appellant's second issue.

## III. CONCLUSION

Having overruled all four of appellant's issues, we affirm the trial court's judgment.

/Maricela Breedlove//
MARICELA BREEDLOVE
JUSTICE

220235f.u05
Do Not Publish
Tex. R. App. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

HUI ZHU LU, Appellant

No. 05-22-00235-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 6, Collin County, Texas
Trial Court Cause No. 006-85110-2021.
Opinion delivered by Justice Breedlove. Justices Partida-Kipness and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of May, 2023.